**In re Cecil Calvert COTT and Barbara Loretta Cott, Debtors.**

**Bankruptcy No. 83–01768–2–11.**

United States Bankruptcy Court,
W.D. Missouri, S.D.

June 3, 1985.

William R. Jackson, Kansas City, Mo., for debtors.

Mark Foster, Mary Ann Tyrrell, Kansas City, Mo., for Boatmens Bank of Marshall.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

The Court denied confirmation of debtors' first plan of reorganization, finding that it was not feasible and that unsecured creditors would not receive as much under the plan as in liquidation. A second amended plan was filed on which a hearing was held. Debtors appeared in person and by counsel; Charterbank (Boatmens) of Marshall appeared by counsel and a representative. Evidence was heard and the matter taken under advisement.

Thereafter the Court and counsel met to discuss the issues raised. The Court suggested that the plan as proposed was not feasible as it depended upon optimum price and production levels over an extended period of time, a projection simply not reliable in a farm economy. The Court further suggested that debtors should consider surrender of some assets in lieu of debt as a method of reducing demands of debt service.

In response debtors proposed amendments to the plan which did involve the surrender of property but not real estate. The surrender of a bond and a certificate of deposit would reduce debt service $5,000 a year over a short period of time. The debtors also proposed to reduce payments to Mrs. Akeman and to reduce labor costs by $10,000 per year. These measures they contend will give them the flexibility needed to cope with variances in cash flow over the life of the plan.

The Bank objects to confirmation of the plan as not feasible. The testimony adduced on behalf of the Bank shows that if every assumption debtors made proved true over the life of the plan, the plan was feasible. If any assumption failed, so the evidence showed, then the plan would run deficits of significant size. While the Bank has not had an opportunity to analyze the proposed amendments, the deficit projections exceed the proposed savings and, therefore, the amended plan makes no impact on the Bank's fundamental argument. In light of that the Court will examine the plan as if amended by the last filing.

The disagreements giving rise to the dispute as to feasibility are in two areas. One of these is the amount of the secured claim. The other is the income to be generated by farming activities. The parties agree that the expense projections, except for debt service, are accurate.

The farm consists of 700 acres in Saline County, Missouri, together with the improvements located on the land. The Bank holds first and third position liens on the real property. FmHA holds a second lien. Debtors consider the third position to be totally unsecured and FmHA to be secured only to the amount of $94,000. The value of the real estate is considered to be $344,-000. The Bank disputes this valuation.

The evidence at the last hearing shows values of the real property ranging from $350,000 to $533,000. There is little doubt that farm values are depressed because of the state of the agricultural economy. The Cott farm is well improved and has a high proportion of good crop land. It is in good condition. At the time of filing, in July of 1983, debtors valued the property at $990,-

000. It appears in the first disclosure statement filed in November of 1983 that debtors valued the farm at about $750,000. The Court is not persuaded that the farm was worth $990,000 in July of 1983 or that it has depreciated to a value of $350,000 in 1985, but there is little question that farm values have deteriorated substantially. Based upon the quality of the land and of the improvements, taking the market into account, and because the property can be sold in 3 tracts which increases marketability, the Court concludes that a reasonable market value is $400,000. This, of course, increases somewhat the amount of money necessary for debt service which only aggravates the income problems in this case.

Debtors' income projections are based upon hog sales at 50¢ a pound, corn sales at $3.00 a bushel and soy bean sales at $7.00 a bushel. Debtors also project optimum yields in the crops. A few days after the hearing hog prices ranged from $45.35 a hundred (45.3¢ a pound) for June to $48.00 a hundred (48¢ a pound) in February of 1986. No animal was priced at 50¢. Corn ranges from $2.81 for May to $2.79 for July 1986 per bushel. No price reached $3.00. Soy beans per bushel ranges from $5.79 in May to $6.19 in May of 1986. No price reached $7.00. Wall Street Journal, May 9, 1985, p. 42. On May 31, 1985, as this opinion is being drafted, corn and soy bean prices are down but hog prices for July and August topped 50¢ although through the full range of time stayed generally about 2¢ below 50¢. Wall Street Journal, May 31, 1985, p. 22.

"Findings as to the earning capacity of an enterprise are essential to a determination of the feasibility ... of a plan of reorganization. Whether or not the earnings may reasonably be expected to meet the interest and dividend requirements of the new securities is a sine qua non to a determination of the integrity and practicability of the new capital structure ... Such criterion is the appropriate one here, since we are dealing with the issue of solvency arising in connection with reorganization plans involving productive properties.... Since its application requires a prediction as to what will occur in the future, an estimate, as distinguished from mathematical certitude, is all that can be made. But that estimate must be based on an informed judgment which embraces all facts relevant to future earning capacity ...". *Consolidated Rock Products Co. v. DuBois*, 312 U.S. 510, 525–526, 61 S.Ct. 675, 685, 85 L.Ed. 982 (1941).

See also *Temmer v. Denver Tramway Co.*, 18 F.2d 226 (8th Cir.1927), *In re Landau Boat Co.*, 13 B.R. 788 (Bkrtcy.WD Mo. 1981) and *In re Fursman Ranch*, 38 B.R. 907 (Bkrtcy.WD Mo.1984).

While the Court is not required to evaluate with accuracy the prospects of success of the plan over its entire term, a short range determination is necessary. The history of this case, as reflected in the monthly reports, shows that optimum projections are not realistic. The plan is so narrowly constructed that any swing in the assumptions to the negative causes the plan to fail. For the plan to succeed every variable over 20 years must favor debtors. That is probably impossible. The short term outlook is equally tenuous. Even now income projections based upon hog, corn and soy bean sales cannot be justified because the market prices are below those predictions. The proposed changes do not remedy these shortfalls.

For example, debtors propose to sell 1000 hogs weighing 250 pounds each year. With hogs at 48¢, the variance over the year is $5,000. Debtors also propose to sell 5000 bushels of corn and feed 20,000 bushels, based upon yields of 125 bushels an acre. If the yield falls to 100 bushels an acre, the income loss would be $14,050. Even if the yield comes as projected, a price of $2.81 a bushel will result in an income shortfall of $950. Over the 20 years of the plan this amounts to $19,000.

The Court finds that the proposed amended plan, even as modified, is not feasible. Confirmation is DENIED. Debtors are granted to June 17, 1985, to convert

this case to one under Chapter 7 or to dismiss.