In re Terrance and Marcia **CROWLEY, Debtors.**

No. 87–C–893–S.

United States District Court, W.D. Wisconsin.

March 14, 1988.

Galen Pittman, La Crosse, Wis., for appellants.

Michael McAlpine, Sparta, Wis., for appellee.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

The debtors in this Chapter 12 bankruptcy proceeding, Terrance and Marcia Crowley, appeal the decision of the bankruptcy court for the Western District of Wisconsin, Judge Thomas S. Utschig presiding, denying confirmation of debtors' plan. The bankruptcy court denied confirmation because it found that the plan was not feasible under § 1225(a)(6) of the Bankruptcy Code. Jurisdiction for review of the bankruptcy court's decision is pursuant to 28 U.S.C. §§ 1334(b) and 158(a).

### Facts

The debtors own and operate a dairy farm north of the City of Viroqua near the town of West Prairie in Vernon County, Wisconsin. Between 1983 and 1987, the debtors milked an average of twenty-two dairy cows and had eighteen cows in 1987 at the time of the confirmation hearing before the bankruptcy court. The farm consists of 155 acres, approximately 80 acres of which are tillable. Marcia Crowley is employed outside of the farm and earns approximately $650 per month. In addition, the Crowley children receive Social Security in the amount of $1500 per month and Marcia Crowley receives worker's compensation death benefits in the amount of $108.66 per month.

Two experts conducted feasibility studies and testified at the hearing with regard to the feasibility of the plan. Mr. Theodore Hillert testified as an expert for the debtors and Mr. Willard testified as the expert

for Federal Land Bank. The experts agreed that in order for the plan to be feasible the productivity of the debtors' dairy cattle would have to be approximately 12,000 pounds of milk per cow per year. This production level requirement might be slightly reduced by the outside income of Mrs. Crowley.

The testimony at trial was that during the four years from 1983 to 1986, the average production per cow remained relatively constant between 5,000 and 6,000 pounds per year. There was disagreement in the testimony as to the current production in 1987. Mr. Hillert and the debtor indicated that based upon extrapolation from production in the month of July, the cows were producing an average 9,000 pounds per year, while the witness for Federal Land Bank testified that based upon the first six months of 1987, the average production was less than 4,800 pounds per cow per year. Debtors' attorney observed the hazards when extrapolating from less than an annual production period to reach an annual production amount because of the variance in milk production relating to the lactation period of dairy cattle.

In response to questioning by the court, the debtor stated during the year immediately preceding the confirmation hearing, while Mrs. Crowley was working outside the farm, the total income of the farm, including outside income, was sufficient only to pay living expenses. The debtors were unable to pay anything to secured creditors during that period.

Both experts testified that productivity of 12,000 pounds per cow per year was agronomically feasible assuming that all appropriate farm management practices were undertaken by the debtors. Both experts also testified that this would require substantial changes on the part of the debtors because their practices were presently below the average. Mr. Werth testified that he believed, based upon the debtors' past practices, that such changes were improbable.

Mr. Hillert testified that assuming all proper practices were followed the debtors

could not expect to achieve 12,000 pounds per cow per year for at least two years. No expert had considered how payments could be made under the plan during the intervening two years before the necessary productivity would be achieved.

At the conclusion of the hearing, the bankruptcy court made the following findings of fact and conclusions of law:

Testimony of the debtor, the debtors' expert, and the creditor's expert all show that production is in the five to six-thousand-pound-per-cow per-year range, and currently this last June it was in the nine-thousand pound range, but basically the testimony shows that from 1982 to 1987 the range has been five thousand pounds to six thousand pounds as an average, and there was pretty much unanimous agreement to that, and the plan sets forth that twelve thousand pounds would be needed.

However, Mr. Freund points out that because of contribution of your income, Mrs. Crowley, that production could be somewhat less than the twelve-thousand-pound average.

I think there was also pretty much uniform agreement among the experts though, to reach that twelve-thousand-pound average, that it would take probably two years to get it up that high. And I don't think that there was any showing whatsoever that there's any trend of increasing production; rather, it seems that the production has remained pretty steady in that five to six-thousand pound average, although certainly we could rehash all those numbers and generate them more carefully than I think was done....

But I think there's a tendency among counsel to also think that part of the plan would be how much can we increase production, and in that regard, I entirely agree with the position of the creditor in this case, and that is that we must be guided by past production.

This Court will not confirm the Chapter 12 plan, and I intend to be consistent in this regard based upon speculation as to future production.

There's been testimony that the debtor will change; nevertheless, I think the overwhelming weight of the testimony happens to be that past production, be it management or condition of the buildings or the land or feed used, the decisions made, the production has been very much significantly below what is necessary to perform and make all payments under the plan in accordance with Section 1225(a)(6).

It appears to me very clear that based upon past performance, despite good intentions to change, that the debtor will not be able to make payments under the plan and comply with the plan. Accordingly, confirmation is denied.

## OPINION

In reviewing decisions of the bankruptcy court, this Court reviews conclusions of law *de novo*. *Matter of Evanston Motor Co., Inc.*, 735 F.2d 1029 (1984). However, findings of fact will be reversed by this Court only where they are found to be clearly erroneous. Fed.R.Bankr.P. 8013.

In this case, the issue before the Court is whether the bankruptcy court properly determined that the plan was not feasible under § 1225(a)(6) of the Bankruptcy Code. The key to the determination of feasibility relates to "the probability of actual performance of provisions of the plan." *In re Konzak*, 78 B.R. 990 (D.N.D., 1987). More specifically, a plan will be found feasible if "it appears reasonably probable that the farmer can pay the restructured secured debt over a reasonable period of time, at a reasonable rate of interest, in light of farm prices and farm programs as of the date of confirmation." *Id.* (citations omitted).

■ The parties disagree on whether the determination of feasibility is a question of fact, entitled to great deference by this Court, or a question of law to be reviewed *de novo*. This Court finds that feasibility, which depends on a determination of the reasonable probability of payment, is fundamentally a fact question. Resolution of feasibility necessarily entails a determination of the comparative credibility of experts, as well as the credibility of the debt-

or. In this case, factual issues such as the level of past production and the likelihood of future improvement were at the heart of the resolution of the feasibility issue. Certainly, the judge who heard the relevant testimony is in a better position to assess the testimony than is this Court on a paper record. Therefore, this Court will generally review the feasibility determination on the clearly erroneous standard.

However, appellants contend that as a matter of law once it has been established by expert testimony that the plan is agronomically feasible, the court must find the plan feasible under § 1225(a)(6) and is precluded from examining past productivity and past management practices in reaching its feasibility determination. The court agrees that this issue is legal in nature subject to *de novo* review and will proceed to resolve the issue before reviewing the entire decision under the "clearly erroneous" standard.

■ The Court finds no support for the proposition that bare agronomic feasibility is all that is required to establish a "feasible" Chapter 12 plan. Such a technical agronomical feasibility determination generally includes a variety of assumptions and the likelihood that these assumptions will occur must be determined by the Court. In this case, the principal assumptions are that the debtors will undertake a variety of new practices and these practices will more than double production. Because past behavior and productivity are excellent indicators of future productivity, courts have frequently rejected plans which are premised on highly optimistic projections of increased production. *In re Cott*, 49 B.R. 570 (W.D.Mo.1985), *In re Reitz*, 79 B.R. 934 (D.Kan., 1987), *In re Konzak*, 78 B.R. 990.

■ For example, in *In re Cott*, 49 B.R. 570, "testimony adduced on behalf of the Bank shows that if every assumption debtors made proved true over the life of the plan, the plan was feasible." After reviewing past performance and considering the debtors' optimistic predictions the Court stated: "The history of this case, as reflected by monthly reports, shows that opti-

mum projections are not realistic." *Id.* at 572. In this case the success of the debtor's plan, while technically possible, depends upon a doubling of past production. Under such circumstances a court would be remiss if it failed to consider the reasons for low past production in assessing the likelihood of the plan's success.

It is entirely inappropriate to legally bind a bankruptcy court to future projections regardless of past behavior. "The plan must, to the extent possible, be based on known inputs including yields, farm prices and programs as presently existing. No one can predict what prices will be in the future and it is folly to peg feasibility upon future yields and market prices which are at best often unpredictable and at worst even imaginary." *In re Konzak*, 78 B.R. 990, 994 (D.N.D.,1987). The bankruptcy court acted properly in considering the reasons for past low production in assessing the feasibility of a plan which hinged on greatly improved yields.

■ The Court now turns to the question of whether the bankruptcy court's factual conclusion that it was not reasonably probable that payments could be made under the plan was "clearly erroneous." The Court finds it was not. In his findings the bankruptcy judge asserted two reasons for finding the plan not feasible: (1) No testimony indicated that the production would reach the necessary level for at least two years and (2) past production was so far below required production that compliance with the plan was not reasonably probable.

Regarding the first reason it appears undisputed in the record that neither the experts nor the debtors had considered how payments would be made during the two years before the productivity goal was reached. Although the debtors asserted that the gap could be filled by outside income, they also testified that over the past year outside income *plus* farm income was insufficient to make any payments to secured creditors. It was also not clearly erroneous for the court to reject the debtors' 9000 pounds per cow per year current yield testimony in light of conflicting testimony and warnings against projections

based on single month productivity. In light of the fact that debtors have the burden of proof on this issue, a finding of nonfeasibility, far from being clearly erroneous, is virtually mandated by the testimony. It should be noted that this finding would support a nonfeasibility determination independent of the second reason.

The second reason advanced by the court, that the increased yield projections were simply not reasonably likely to occur, is also not clearly erroneous. As noted previously, speculative predictions of future yields need not be accepted by the court without question. While this Court does not hold that a predicted increase in production precludes confirmation of a plan, where plan feasibility depends on doubled productivity, and testimony demonstrates a consistent history of poor management, it was not erroneous for the bankruptcy court to find the plan not feasible.

Accordingly,

### ORDER
The decision of the bankruptcy court is AFFIRMED.