**In re Bill TATE and wife, Rhonda Tate, Debtors.**

**Bankruptcy No. 96–31073–S.**

United States Bankruptcy Court, E.D. Texas, Paris Division.

July 8, 1997.

*OPINION*

DONALD R. SHARP, Chief Judge.

NOW before the court for consideration is the Confirmation of Debtors' Third Amended Chapter 12 Plan, Motion by Creditor Farm Credit Bank of Texas to lift stay, and the Motion by Creditor First National Bank of Sulphur Springs to lift stay or in the alternative for adequate protection. At the conclusion of the hearing, all matters were taken under advisement. This opinion constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rules of Bankruptcy Procedure 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

Bill and Rhonda Tate ("Debtors"), filed a voluntary petition for bankruptcy on April 25, 1996, under Chapter 12 of the United States Bankruptcy Code. The plan was amended several times and at the confirmation hearing Debtors added a provision to the Plan to guarantee the unsecured creditors $97,000 in total.

Bill Tate's farming operation consists of raising commercial cattle, trucking (hauling milk), and custom farming. Mr. Tate has been involved in the commercial cattle business for over 40 years and in the dairy business for 34 years. Debtors operations are in Hopkins County, Texas.

First National Bank of Sulphur Springs is the holder of a promissory note executed by the Debtors dated July 1, 1995, in the original amount of $288,615.55. In order to secure the note Debtors granted a security interest in inventory, equipment, farm products, and all livestock and equipment, now owned and hereafter acquired, wherever located.

Farm Credit Bank of Texas is the holder of three promissory notes executed by the Debtors dated February 24, 1995, April 26, 1995, and June 17, 1995. The notes are secured by three Deeds of Trust covering several tracts of real property.

Bill and Rhonda Tate, Sulpher Springs, TX, Pro se.

Scott Ritcheson, Tyler, TX, for Farm Credit Bank of Texas.

## *DISCUSSION*

### A. CONFIRMATION

 The primary objection to the confirmation of the Debtors' Plan is as to its feasibility. The feasibility test as stated in Bankruptcy Code § 1225(a)(6) provides that a Chapter 12 Plan shall be confirmed if "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1225(a)(6). "Feasibility, which depends on a determination of the reasonable probability of payment, is fundamentally a fact question. Resolution of feasibility necessarily entails a determination of the comparative credibility of experts, as well as the credibility of the debtor." *In re Crowley*, 85 B.R. 76, 78–79 (Bankr.W.D.Wis.1988).

 "The purpose of chapter 12 is to promote the reorganization of family farmers, and the Court should give the Debtor the benefit of the doubt on the issue of feasibility." *In re Hopwood*, 124 B.R. 82, 86 (Bankr.E.D.Mo.1991). Many courts have held that a Chapter 12 debtor should be given the benefit of the doubt regarding the issue of feasibility when the debtors plan projections—using reasonable inputs in light of the current economic climate—indicates that it is reasonably probable that debtor can satisfy the plan payments. *In re Rape*, 104 B.R. 741, 748 (Bankr.W.D.N.C.1989). Thus, it is not necessary that the Debtor guarantee to the Court that the plan will be successful, but only provide reasonable assurance that the plan can be achieved. *In re Hopwood*, 124 B.R. at 86.

 However, the Court must be persuaded that it is probable that a plan will be able to cash flow based upon realistic and objective facts (as opposed to visionary or overly optimistic projections). *In re Honeyman*, 201 B.R. 533, 537 (Bankr.D.N.D.1996). Other courts have stated that "[m]arket projections must be supported by some factual basis in order for them to be regarded by the Court as anything more than wishful thinking." *In re Snider Farms, Inc.*, 83 B.R. 1003, 1013 (Bankr.N.D.Ind.1988). Also to be considered is the farms's earning power, capital structure, economic conditions, managerial efficiency, and whether the same management will continue to operate the farm. *In re Rape*, 104 B.R. at 749.

 Debtors bear the burden of proof as to the feasibility of their plan. *In re Rape*, 104 B.R. 741, 748 (W.D.N.C.1989). Debtors primarily supported their bid for confirmation with the testimony of Bill Tate. He testified as to how the Debtors had arrived at their projections for future operation of their farming enterprise and how he proposed to fund the Chapter 12 Plan. Mr. Tate expects the size of his herd to increase, the price of cattle to increase, his custom farming operation to increase and the corresponding expenses for all of these enterprises to decrease below the level shown in his 1993 through 1996 income tax returns. The Court could discern no appreciable change in the way he proposed to operate his business and there was no showing of any changed circumstances which would justify the belief that expenses would decrease and that income would increase. Mr. Tate's optimism and confidence in his ability are admirable but there are simply no facts to support his optimistic projections.

Creditor, First National Bank of Sulphur Springs (FNBSS), objects to the confirmation of the plan. The primary objection is that the plan as proposed is simply not feasible. In support of their contention, FNBSS offered the testimony of Mr. Taggard, Executive Vice President of the Bank, who has been in the banking business since 1966 and has had wide experience in agricultural lending. Mr. Taggard explained the income analysis he performed. The analysis was based on the Debtors' 1993, 1994 and 1995 income tax returns and the financial information furnished to the Bank by Debtors. Based on Taggard's analysis, the Plan as proposed is not feasible. The Debtors have experienced significant losses for the prior three years and there is nothing in the plan to indicate the possibility of profitable operations in the future. In addition, the Court agrees with Taggard's conclusion that the figures used by the Debtors in their pro forma analysis of their future operations under the plan are incorrect. The assumptions, as to greatly increased revenue and lower expenses, are not supported by any competent evidence.

The Court agrees with *In re Rape,* and believes that the Chapter 12 Debtor should be given the benefit of the doubt on the issue of feasibility. However, it is clear that Debtors have not met their burden on the issue of feasibility. Debtors have not shown that there is any reasonable probability that their plan can be achieved even with the benefit of the doubt regarding feasibility. First, the Debtors' future expense projections are impossible based on the evidence and expert testimony presented. The estimated expenses are well below the actual expenses shown on the Debtors' 1994 and 1995 Schedule F, Profit or Loss from Farming. Second, Debtors failed to show any evidence to support their projections for future income from their trucking business. Third, the estimated profits on the sale of cattle in the futures market are unrealistic based on the selling price of cattle at the time of confirmation. Fourth, the Debtors' failed to show any evidence to support the factors they used to arrive at their future projections. Based on the inability to propose a feasible plan, the Court finds that it is not necessary to resolve the banks second objection that the rate of interest to be paid to FNBSS is too low. It is therefore

ORDERED that confirmation of Debtors' Third Amended Plan be denied.

## B. MOTIONS TO LIFT STAY

Both FNBSS and the Farm Credit Bank of Texas ("FCBT") filed motions for relief from the Automatic Stay pursuant to section 362(d) of the Bankruptcy Code.

On request of a party in interest and after notice and hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

Under section 362(g), the movant has the burden of proof on the issue of equity and the party opposing the motion to lift the stay, has the burden of proof on all other issues.

FNBSS requests that the automatic stay be terminated for cause pursuant to 11 U.S.C. § 362(d)(1) in that the Debtors have failed to comply with the terms of the Note by failing to make all payments in a timely manner. In addition, they claim that there is no equity in their collateral and it continues to decline in value through ordinary depreciation. Finally, they argue that Debtors have not provided adequate protection.

FCBT also requests that the automatic stay be terminated pursuant to 11 U.S.C. § 362(d) because its interest is not adequately protected. FCBT cites the fact that the Debtors have been unable to make payments of principal and interest and are unable to maintain the property causing harm to them.

The hearings on both motions for relief from stay were combined with the hearing on the Debtors' Third Amended Plan of Reorganization with all evidence presented to be considered in connection with each matter. With the above finding that the Third Amended Plan of Reorganization is not feasible, the Motions for Relief from Stay must also be granted.

In response to a motion for relief from stay, the Debtors must prove not only that the property was necessary for an effective reorganization but that there is a "reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n v. Timbers of Inwood Forest,* 484 U.S. 365, 376, 108 S.Ct. 626, 633, 98 L.Ed.2d 740, 751 (1988). *In re Canal Place Ltd. Partnership,* 921 F.2d 569 (5th Cir.1991).

Based on the Debtors' inability to propose a feasible plan, the Debtors have failed to prove a reasonable possibility of

reorganization. The Court grants both Motions to Lift the stay.