**In re Harry James HART, SS#: 228–64–1234, Carolyn H. Hart, SS#: 574–20–6667, Debtors.**

**Bankruptcy No. 87–01201–S03.**

United States Bankruptcy Court, E.D. North Carolina.

Aug. 29, 1988.

Peter J. Sarda, Raleigh, N.C., for debtors.

Richard M. Stearns, Kinston, N.C., for Trustee.

Stephen A. West, Asst. U.S. Atty., Raleigh, N.C., for FmHA.

Edward J. Harper, Greenville, N.C., for Federal Land Bank.

## MEMORANDUM OPINION AND ORDER ALLOWING MODIFICATION TO CONFIRMED CHAPTER 12 PLAN

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the "Application to Modify Plan After Confirmation"[1] filed by the chapter 12 debtors on June 15, 1988. The modification was opposed by the Federal Land Bank of Columbia ("FLB") on the grounds that the modification violates 11 U.S.C. § 1229(c) because the modified plan provides for payments beyond five years and that the debtors will be unable to make all payments under the modified plan in violation of 11 U.S.C. § 1225(a)(6). A hearing was held in Raleigh, North Carolina, on August 16, 1988, and the modification will be allowed.

*Background*

Harry James Hart and Carolyn H. Hart filed a voluntary petition under chapter 12 of the Bankruptcy Code on May 5, 1987. The Harts own and operate a 670 acre dairy farm in Bolton, North Carolina, near the Green Swamp in Columbus County. All of the debtors' assets are encumbered and the two major creditors are FLB and the United States Farmers Home Administration ("FmHA").[2] The debtors' schedules reflect that FLB has a secured claim of approximately $367,000 secured by the 670 acre farm. The schedules also show that FmHA has several claims including a $171,000 claim secured by a second lien on the farm, a claim of $86,000 secured by the debtors' herd of approximately 108 Holstein cows, and two claims for operating loans totalling $40,000 secured by the herd and the debtors' equipment.

The debtors filed their plan of reorganization on August 3, 1987, which proposed to "write down" FLB's first lien on the farm to $357,000 and to pay FLB's debt over 20 years. The plan eliminated FmHA's lien on the farm, but recognized FmHA's claim for $113,000 secured by cows and equipment and proposed a repayment of that claim over five years. The unsecured claims of FLB ($18,000) and FmHA ($184,000) were to be paid from the debtors' disposable income for three years; it was further provided that no less than a total of $10,100 would be paid from disposable income. All other secured claimants were unimpaired by the plan and would continue to receive their regular contract payments.

Both FLB and FmHA filed objections to the plan and, as so often happens in chapter 12 cases, the parties entered into agreements providing for the treatment of the secured claims under the plan.

FLB and the debtor agreed that FLB would have a fully secured claim in the amount of $391,786.05 (as of August 1, 1987) which was secured by the debtors' 670 acre farm. The FLB claim was to be partially satisfied from the proceeds of a sale of 240 acres by the debtors to FmHA for a purchase price of $106,000. The balance of FLB's claim was to be paid in monthly installments over a period of 30

---

1. The debtors' application should have been denominated a *motion* to modify the plan pursuant to Bankruptcy Rule 9013.

2. Other creditors with secured claims include Chrysler Credit Corp. ($12,300—1986 Dodge), Massey Ferguson Credit ($6,600—planter), and Columbus County ASCS ($28,000—14,000 bushels of corn).

years with interest at FLB's announced floating rate.

FmHA and the debtor agreed that FmHA would have three claims. The first claim is a secured claim in the amount of $30,740.55 secured by a second deed of trust on the farm. The second claim is a secured claim in the amount of $123,000 payable in monthly payments over 8 years at 9.5% interest and secured by a lien on the debtors' cows and equipment and by a second lien on the debtors' farm. The third FmHA claim is an unsecured claim in the amount of $150,000 which is to be paid from the debtors' disposable income over three years in an amount not less than $25,100 plus interest at the rate of 7% per annum. FmHA's claim is the debtors' only unsecured claim.

The debtors filed an amended plan on November 9, 1987, which incorporated the agreements with FLB and FmHA, and no other claims were impaired.

Notwithstanding the agreement concerning the amount of its claims and the method of repayment, FmHA objected to the plan on the ground that the debtors could not meet the payments required by the plan—i.e., that the plan was not feasible. FLB withdrew its prior objection on that same ground and, after hearing the debtors' evidence, the court confirmed the plan over FmHA's objection on November 27, 1987.

Although the confirmed plan contemplated the sale of 240 acres to FmHA, the sale was never consummated. Instead, the debtors now wish to retain the 240 acres and to pay the full amount of FLB's claim in monthly payments over 30 years. FmHA and the chapter 12 trustee support the modification, but FLB objects, contending that as a matter of law a confirmed chapter 12 plan may not be modified if the modified plan provides for payments for more than a three year period (or five years with court approval) from the time

that the first payment under the original confirmed plan was due. 11 U.S.C. § 1229(c). Furthermore, FLB contends that, even if the modification is not prohibited, the plan as modified is not feasible.

*Modification Under 11 U.S.C. § 1229*

Section 1229(a) provides that a confirmed chapter 12 plan may be modified by a debtor at any time after confirmation of the plan "before the completion of payments under such plan." [3] The plan may only be modified to

1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

2) extend or reduce the time for such payments; or

3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1229(a).[4]

■ The modification in this case increases the amount of the monthly payments to FLB to replace the proceeds which would have gone to reduce FLB's claim had the sale of the 240 acres to FmHA been completed. The modification therefore is the type of modification authorized by 11 U.S.C. § 1229(a)(1).

FLB maintains that 11 U.S.C. § 1229(c) prohibits any postconfirmation modification of a plan if the modified plan provides for payments over a period longer than three years (or five years with court approval) starting from the time that the first payment under the original confirmed plan was due. In the present case, the modified plan, like the original confirmed plan, provides for payments to FLB over a period of 30 years and, according to FLB, the proposed modification is impermissible. Bankruptcy Code section 1229(c) provides that

A plan modified under this section may not provide for payments over a period

---

3. Compare 11 U.S.C. § 1229(a) with 11 U.S.C. § 1127(b). In a chapter 11 case, the confirmed plan may not be amended after there has been "substantial consummation" of the plan as that term is defined in 11 U.S.C. § 1101(2).

4. There is no similar limitation on the type of post-confirmation modification which may be made in a chapter 11 case under 11 U.S.C. § 1127(b).

that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

Standing alone, 11 U.S.C. § 1229(c) could be read to support FLB's position, but this section should not be read in isolation. Statutory construction is a "holistic endeavor." *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* — U.S. ——, 108 S.Ct. 626, 630, 98 L.ED.2d 740 (1988).[5]

If FLB's interpretation of § 1229(c) is correct, virtually no confirmed chapter 12 plan could be modified because almost all chapter 12 plans, both as originally confirmed and as proposed to be modified, provide for the payment of claims secured by the family farm to be paid over periods substantially longer than 3 to 5 years.[6]

■ Section 1229(c) is taken verbatim from chapter 13's section 1329(c). In a chapter 13 case the original plan may not, pursuant to § 1322(c), provide for any payments over a period longer than three years (or five years with court approval) with respect to any claims to be affected by the plan,[7] and consequently the limit of § 1329(c) with respect to such payments under a modified plan on both secured and unsecured claims is consistent with the overall design of chapter 13. A limit with respect to secured claims, however, would

be inconsistent with the general scheme of chapter 12. Although the payment of unsecured claims in a chapter 12 unmodified plan is subject to the same 3 year (or 5 year with court approval) limitation that exists in chapter 13, there is no statutory limit in chapter 12 on the length of time over which secured claims may be paid. 11 U.S.C. § 1222(b)(9), and (c).[8]

■ Section 1229(b)(1) makes § 1222(b) applicable to post-confirmation modifications under § 1229(a).[9] Section 1222(b)(9) clearly permits a plan to spread the payment of secured claims over periods longer than three to five years, and that authorization, when combined with § 1229(b)(1), clearly conflicts with any limitation on the length of payment of secured claims under a modified plan imposed by § 1229(c). The conflict can be resolved by reference to the statutory scheme of chapter 12. *See United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* — U.S. ——, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988).

Chapter 12 is emergency legislation which is designed to "give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land." Joint Explanatory Statement of the Committee of Conference, reprinted in 132 Cong.Rec. H8998, H8999 (Oct. 2, 1986). Limiting a family farmer's ability to amend a confirmed plan to provide for the repayment of the farm mortgage beyond three to five years would be inconsistent with

---

5. Justice Douglas in *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966) observed that "we do not read these statutory words with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." Quoted also in *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 361, 93 L.Ed.2d 216 (1986).

6. *See* Small, *After the Fall—Chapter 12 Phase II,* Norton Bankruptcy Law Adviser, February, 1988 at p. 3.

7. A chapter 13 plan may leave unaffected the rights of holders of any class of claims even if those unaffected rights provide for a payment period of more than 5 years. *See* 11 U.S.C. § 1322(b)(2). The same rule with respect to

unaffected claims applies in chapter 12. 11 U.S.C. § 1222(b)(2).

8. 11 U.S.C. § 1222(c) provides that "[e]xcept as provided in subsections (b)(5) and (b)(9), the plan may not provide for payments over a period that is longer than three years unless the court for cause approves a longer period, but the court may not approve a period that is longer than five years." Subsection (b)(9) specifically authorizes a chapter 12 plan to provide for the payment of secured claims over a period exceeding the time limits set forth in § 1222(c).

9. 11 U.S.C. § 1229(b) provides that "[s]ections 1222(a), 1222(b), and 1223(c) of this title and the requirements of section 1225(a) of this title apply to any modification under subsection (a) of this section."

chapter 12's stated purpose. That is certainly so in this case because, if FLB's interpretation of 11 U.S.C. § 1229(c) is correct and the proposed modification is prohibited, Mr. and Mrs. Hart would have to sell 240 acres of their family farm.

In chapter 11 a confirmed plan that has not been substantially consummated may be modified and there is no limitation relating to the length of time for the payment of secured claims.[10] Congress did not intend farm reorganizations under chapter 12 to be less accessible to farmers than the relief provided by chapter 11. *Norwest Bank Worthington v. Ahlers,* —— U.S. ——, 108 S.Ct. 963, 971, 99 L.Ed.2d 169 (1988). If § 1229(c) were to impose a limit on the debtor's right to modify a plan simply because the proposed modification spread out the payment of secured claims for a longer period than three to five years, a chapter 12 debtor's right to modify would be substantially inferior to the modification rights of a debtor in chapter 11. It follows that Congress did not intend such a substantial restriction on the utility of chapter 12 as a prohibition of chapter 12 plan modifications which provide for payment of secured claims for a period of longer than three to five years.

For the foregoing reasons the court declines to accept FLB's interpretation of 11 U.S.C. § 1229(c) and concludes that § 1229(c) does not preclude the modification proposed by the debtors in this case.

*11 U.S.C. § 1225(a)(6) and Feasibility*

■ FmHA and FLB both objected to the confirmation of the debtors' original plan on the ground that the debtors would not be able to make all payments under the plan and to comply with the plan as required by 11 U.S.C. § 1225(a)(6). FLB withdrew its objection to the confirmation of the original plan, but FmHA pressed the issue. After hearing the debtors' evidence at the confirmation hearing, the court found that all confirmation requirements were met including the "feasibility" requirement of § 1225(a)(6). A modified plan

under § 1229 must meet the confirmation requirements of § 1225(a) and therefore the modified plan must be feasible. § 1229(b).

Interestingly, FmHA now contends that the modified plan is feasible and FLB says that it is not. The Harts have made all payments due under their chapter 12 plan and have demonstrated by performance that the original plan is feasible.

At the hearing to consider the modification of the plan, Mr. Hart testified that he would use the 240 acres he hoped to retain to grow corn to feed his cows. While that would not increase the debtors' revenues, it would reduce the debtors' feed costs and improve the debtors' overall profitability. While Mr. Hart did not give precise projections outlining the savings, he did state unequivocally that the monthly savings on feed costs would exceed the increase in the monthly payment to FLB. Recent increases in corn prices resulting from drought conditions give credibility to Mr. Hart's forecast, and FLB offered no evidence to refute Mr. Hart's assertions.

■ When a debtor modifies a confirmed chapter 12 plan under § 1229, the debtor has the burden of proving that the modifications meet the confirmation requirements. *In re Dittmer,* 82 B.R. 1019, 1021 (Bankr.D.N.D.1988). The debtor must show that there is a "probability of actual performance of provisions of the plan." *In re Crowley,* 85 B.R. 76, 78 (W.D.Wis.1988) (quoting *In re Konzak,* 78 B.R. 990 (Bankr. D.N.D.1987)). The extent and detail of the evidence required to prove feasibility depends upon the circumstances of each case. If a modification is contested by creditors who will be harmed if the plan does not work, the degree of proof required to demonstrate feasibility will be higher than if there is no objection to the modification.

■ In the present case, the party with the most to lose if the plan is not feasible, FmHA, supports the plan modification. The modification's opponent, FLB, on the

---

10. There is no limitation in chapter 11 with respect to the length of time for the payment of

either secured or unsecured claims.

other hand, is a fully secured creditor which will be receiving payments through the plan on a monthly basis. Most chapter 12 plans provide for annual payments, but, under the modified plan, the debtors will have to prove feasibility by making payments each month. FLB will not have to wait for a year to see if the plan is feasible, and if a monthly payment is missed, FLB may quickly move to lift the stay.

The debtors have proven that they can make the payments under the original plan and Mr. Hart's uncontroverted testimony that the debtors will increase their profitability by growing corn on the 240 acres is credible. The court finds that the debtors will be able to make all payments under the modified plan and that they will be able to comply with the plan as modified. Furthermore, the court finds that the modified plan meets the requirements of 11 U.S.C. §§ 1229, 1222(a), 1222(b), 1223(c), and 1225(a) and concludes that the modification should be approved.

SO ORDERED.