In the MATTER OF Harlan and Elvira SCHNAKENBERG, Debtors.

Bankruptcy No. BK87–00246.

United States Bankruptcy Court, D. Nebraska.

April 24, 1996.

Lance J. Johnson, Germer, Murray & Johnson Law Offices, Bruning, NE, for Debtors.

Susan Knight, Assistant United States Attorney, Lincoln, NE, for Farmers Home Administration, now known as Rural Economic and Community Development/United States of America.

### MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

This Chapter 12 case was closed and the debtors received a discharge in 1991. Debtors have reopened the case and filed a Motion to Modify the Confirmed Chapter 12 Plan. The Objection by the Farmers Home Administration, now known as Rural Economic and Community Development, and herein referenced as United States of America ("USA"), is sustained and the proposed modification is not approved because of the limitation provided in section 1229(c) and the principle of finality.

### FACTS

The debtors' Chapter 12 plan was confirmed June 23, 1987, almost nine years ago. The confirmed plan provided for three years of payments to unsecured creditors out of disposable income. The debtors completed the payments to unsecured creditors in 1990, and on January 10, 1991, I entered an order discharging the debtors under Bankruptcy Code § 1228. This case was closed on April 8, 1991. The case has now been reopened and debtors are attempting to modify plan provisions dealing with the treatment of the allowed secured claim of the USA.

At the time this case was filed, the debtors owned a parcel of real estate valued at $102,515.00 (the "Real Estate"). This Real Estate was subject to an installment contract having a balance of $53,000.00, and a junior lien held by USA which secured two notes totalling $25,000.00.

When the bankruptcy case was filed, the debtors also had a number of other outstanding loans with the USA, each secured by separate collateral and evidenced by separate security instruments. In an order dated December 5, 1995, I ruled that upon confirmation of the debtors' Chapter 12 plan, the debtors' obligations to the USA were consolidated into a single debt to be repaid over thirty years. I also concluded that this consolidated obligation was secured and cross-

collateralized by all the collateral which had secured debtors' pre-bankruptcy obligations to the USA.

Debtors assert that the current unpaid balance owed to the USA under the plan is approximately $168,654.00, and the current total value of collateral securing USA's claim exceeds $450,000.00. The debtors propose to modify the confirmed plan to provide for the sale of the Real Estate free and clear of the liens held by the USA. The proceeds of sale will be used for various purposes. After the proposed sale of the Real Estate, the USA will remain fully secured by a security interest in 320 acres of other land valued at approximately $290,000.00, and a security interest in machinery, equipment and livestock.

The proposed modification to the plan is the debtors' fourth attempt since confirmation of the plan to modify the rights of the USA. First, on May 11, 1988, the debtors sought permission to obtain an operating line of credit for 1988 crop expenses. The debtors proposed to grant the new lender a priority lien on 1988 crops, livestock, machinery, and a subordinate mortgage on the real estate. The USA objected. This matter was not resolved during the 1988 crop year. Debtors renewed their motion on May 19, 1989, requesting authority to obtain secured financing for the 1989 crop year. On September 8, 1989, this court denied the motion, stating that the proposed financing would impermissibly impair the liens retained by the USA under the confirmed plan. I held that because the USA retained its liens under the confirmed plan, the debtors could not impair the USA's liens under section 364 after confirmation. I further held that debtors' proposed subordination would require amendment of the plan.

In response, the debtors moved to amend their Chapter 12 plan on October 12, 1989. This was within the three to five year period contemplated by section 1229(c). The plan amendment proposed to modify and further impair the USA's claim by permitting debtors to grant a priority security interest in machinery, equipment, livestock and real estate, up to a maximum of $42,000.00, to secure annual operating loans. The court sustained the USA's objections and denied the

proposed modification, citing three reasons. First, the modification of a confirmed Chapter 12 plan to subordinate the lien of a secured creditor was not one of the types of post-confirmation amendments permitted under section 1229(a) of the Bankruptcy Code. The second reason was based on the principle of finality as applied to confirmation proceedings and the res judicata effect of confirmation. Third, was the notion that a post-confirmation modification should be approved only upon a showing of unanticipated circumstances affecting the debtors' ability to implement the plan as confirmed.

On August 21, 1995, debtors filed a "Motion to Compel Release of Security" which proposed a sale of the Real Estate. Under this motion, the debtors sought to compel the USA to release its lien on the Real Estate, offering to pay the USA $18,673.29 from the sale proceeds. The USA again objected. On December 4, 1995, I denied this motion, ruling that the USA's claim was "cross-collateralized" under the terms of the confirmed plan, so that the entire claim of the USA was secured by the property proposed to be sold. I held the debtors did not have the absolute right to require the USA to release its lien in the Real Estate under the terms and conditions set forth in the motion.

The plan modification currently before the court thus represents the fourth attempt by the debtors to impair the liens of the USA in order to obtain funds for their operation.

## DISCUSSION

Under the proposed modification the Real Estate will be sold free and clear of the lien of the USA. The proceeds of sale will be used to reduce operating debt, pay outstanding taxes, make improvements to the irrigation system on the remaining real estate held by debtors, and to pay the USA $17,000.00. The USA's outstanding debt of approximately $150,000.00, will be reamortized over the term and at the interest rate provided in the confirmed plan. The debtors assert that the USA will remain fully secured under the modified plan by virtue of its security interests in the remaining 320 acres, valued at approximately $290,000.00, and by its lien in the debtors' livestock, machinery and equip-

ment. Debtors also assert that their proposed use of the sale proceeds will actually enhance the value of the USA's remaining collateral.

■ Bankruptcy Code § 1229 governs modifications of a confirmed Chapter 12 plan.[1] The debtors, as the party proposing post-confirmation modification of the Chapter 12 plan, bear the burden of establishing that modification is proper. *In re Wruck,* 183 B.R. 862, 865 (Bankr.D.N.D.1995).

### 1. Section 1229.

In a Chapter 12 case, debtors generally make payments to creditors for a period of thirty-six to sixty months. However, importantly, section 1222(b)(9) permits secured debts to be paid over a period of time longer than the life of the Chapter 12 plan. In this important key respect, Chapter 12 is different than Chapter 13. On the facts of this case, the debtors successfully completed payments which were due under the Chapter 12 plan, over the life of the plan, and the debtors then received a discharge under section 1228. The USA asserts that there is no statutory authority for allowing modification of the plan once the debtors have completed making payments under the plan and received a discharge.

The argument of the United States fails to distinguish between payments due within the thirty-six to sixty month life of a plan prior to discharge and payments which are thereafter due. This is an important distinction.

Congress has carefully used language throughout Chapter 12 to distinguish between payments which become due before discharge and those which become due at a later point in time pursuant to section 1222(b)(9). For example, a debtor is eligible for entry of a discharge under section 1228 "as soon as practicable after completion by the debtor of all payments under the plan, other than payments to holders of allowed claims provided for under 1222(b)(5) or 1222(b)(10) [sic][2] of this title...." § 1228(a). Section 1222(c) also carefully distinguishes between the two classes of payments.

■ In this case, the first issue is whether a plan may be modified after discharge and after completion of all payments due during the thirty-six to sixty month term of the plan, if the debtors have not completed making payments on the long term debt paid over a more extended time as allowed by section 1222(b)(9). I conclude that the express language of section 1229 is controlling and that its reference to the completion of payments under a plan is not limited to payments which became due prior to discharge. If Congress had intended to prohibit modification of a plan after discharge and before completion of payments pursuant to section 1222(b)(9), Congress would have used explicit language making reference to section 1222(b)(9), as it so did in drafting sections 1222(c) and 1228(a). I therefore conclude that section 1229(a) does not prohibit modification of the plan after discharge and before

---

1. Bankruptcy Code § 1229 states:

   **Modification of plan after confirmation:**
   (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, on request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
   (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
   (2) extend or reduce the time for such payments; or
   (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.
   (b)(1) Sections 1222(a), 1222(b), and 1223(c) of this title and the requirements of section

   1225(a) of this title apply to any modification under subsection (a) of this section.
   (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
   (c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.
   11 U.S.C. § 1229.

2. The section 1228 cross-reference to section 1222(b)(10) appears to represent a drafting error; the reference should be to section 1222(b)(9). *See* 5 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 1228.01[2][1], n. 1 (15th Ed.1995).

completion of payments pursuant to section 1222(b)(9).

■ This does not end the inquiry, however, because section 1229(c) places further limitations upon modification of a Chapter 12 plan. Even if section 1229(c) is read restrictively to apply only to claims modified or amended in the modified plan, it still clearly provides, as applied to the facts of this case, that the modified plan may not provide for payments over a period that expires after three to five years after the time that the first payment under the original confirmed plan was due. Section 1229(c) is a rule of finality. It precludes modification of longer term debt, unless that modification would provide for payments to be completed in three to five years after the first payment became due under the plan. It is certainly true that section 1229(c) appears to be a harsh rule that severely limits a debtor's ability to modify the rights of a secured creditor in a Chapter 12 case. However, I conclude that this is what Congress stated in section 1229(c). Such rules of finality in the Bankruptcy Code are not without precedent. For example, in a Chapter 11 case a debtor may not modify a confirmed plan after the plan has been substantially consummated. *See* § 1127(b).

■ I conclude, on the limited facts of this case, that section 1229(c) does not permit modification of the treatment of the claim of the United States. I am aware of the case of *In re Hart,* 90 B.R. 150 (Bankr.E.D.N.C. 1988), which appears to be the only reported case construing section 1229(c). That decision points out the various policy reasons why a literal interpretation of section 1229(c) is contrary to some of the policies thought to be served by the Bankruptcy Code. The judge determined to simply ignore section 1229(c) and construe it away. I believe this ignores the clear statutory scheme of section 1229(c). Section 1229 appears to be very carefully drafted. Section 1222(b)(9) is explicitly applicable to modified plans, but section 1229 does not reference section 1222(c). Section 1229(c) is different than section 1222(c), and I conclude that Congress intended different results. Section 1229(c) is inconsistent with 1222(c). To give the statutory language of section 1229(c) meaning, its explicit language should be read as a limitation upon modification—a rule of finality.

### 2. Finality

■ The provisions of a confirmed Chapter 12 plan are binding between debtors and creditors pursuant to 11 U.S.C. § 1227(a). Furthermore, the terms are enforceable unless and until modified under section 1229 of the Bankruptcy Code. *In re Martin,* 130 B.R. 951, 957 (Bankr.N.D.Iowa 1991). Section 1229 provides the only avenue for Chapter 12 plan modification. *Rowley v. Yarnall,* 22 F.3d 190, 194 (8th Cir.1994).

■ The binding and preclusive effect of confirmation satisfies the need for finality in establishing the rights and obligations of the various parties affected by the plan of reorganization. *In re Wruck,* 183 B.R. 862, 865 (Bankr.D.N.D.1995). The need for finality is not paramount in all cases, especially in Chapter 12 cases, where unanticipated changes in circumstances and unexpected problems associated in implementing a farm reorganization, require some degree of flexibility in the operation of section 1227 and the principles of res judicata. *Id.* Congress recognized this need in enacting section 1229. *Id.*

■ Some courts interpret the principles of finality in the Chapter 12 context to mean that debtors cannot invoke the power of the bankruptcy court to modify plan provisions after confirmation, absent a substantial and unanticipated change of circumstances. *See, e.g., In re Grogg Farms, Inc.,* 91 B.R. 482, 485 (Bankr.N.D.Ind.1988) ("Post-confirmation modification is only warranted when an unanticipated change in circumstances effects the implementation of the plan as confirmed. The right or opportunity to modify, thus, exists only in order to address unforeseen circumstances."). Under the facts and circumstances of the case before me, there has been no material change in circumstances to justify modification of the confirmed plan. The debtors have not shown a change in circumstances sufficient to have prevented debtors from completing payments under the plan. In fact, debtors have completed pay-

ments to the trustee and unsecured creditors due under the plan, except for debts payable over an extended time under section 1222(b)(9), and a discharge was entered. Therefore, debtors have not shown the change of circumstances prerequisite to modification of the plan.

The application of the notion of finality is particularly appropriate under the facts and circumstances of this case. The USA has repeatedly resisted the debtors' attempts to modify USA's security interests under the confirmed plan. The court has on three prior occasions refused to permit modification of the rights of the USA.

I note that the proposed sale price of the Real Estate is almost sufficient to pay off the debt owed to the USA. If that were done, the debtor would evidently own 320 acres free and clear, and could use the unencumbered property to finance his operation.

IT IS THEREFORE ORDERED, that the Modification to Confirmed Plan is denied and the Objection by the United States is sustained.