**Leonard Alfred ROWLEY and Beverly Ann Rowley, Appellants,**

v.

**Rick A. YARNALL, Production Credit Association, and Farmers Home Administration, Appellees.**

No. 93–1668.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1993.

Decided April 22, 1994.

J. Bruce Blake, Sioux Falls, SD, argued, for appellant.

Rick A. Yarnall, Sioux Falls, SD, argued, for appellee Yarnall.

Michael E. Ridgway, Yankton, SD, argued (Craig P. Gaumer, Asst. U.S. Atty., on the brief), for Production Credit and Farmers Home Admin.

Before JOHN R. GIBSON * and MORRIS SHEPPARD ARNOLD, Circuit Judges, and WOODS,** District Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Chapter 12 debtors Leonard and Beverly Rowley ("the Rowleys") appeal a district court[1] decision affirming a bankruptcy court denial of their motion for discharge. At issue is whether the family farmer provisions of the bankruptcy code require debtors to pay net disposable income generated during the plan period to unsecured creditors where an objection to the plan was previously raised at its confirmation. We hold that such payments are required and therefore affirm.

## I.

The Rowleys, who are South Dakota farmers, filed a joint voluntary bankruptcy petition under Chapter 12 of the bankruptcy code. The plan provided for no payments at all to the class of unsecured creditors, unless the trustee or an unsecured creditor objected to the plan. The Farmers Home Administration ("FmHA"), the Production Credit Association of the Midlands ("PCA"), and the Federal Land Bank of Omaha, all holding unsecured claims, filed objections to the Rowleys' Chapter 12 plan of reorganization, as did the United States Trustee. The Chapter 12 trustee drafted a plan summary from the information and recommended the case to the bankruptcy court for confirmation. The Chapter 12 trustee approved the plan's treatment of the unsecured creditors, while noting his understanding that "the Debtor(s) have offered to pay all of their net disposable income over the life of the Plan...." The Rowleys subsequently filed a Motion for Discharge. PCA, FmHA, and the United States Trustee all filed objections to the debtors' discharge on the grounds that the debtor had failed to pay net disposable income to the unsecured creditors as promised. To resolve this matter, the Chapter 12 trustee filed a "Complaint to Determine Debtors' Obligation to Pay Net Disposable Income Pursuant to 11 U.S.C. § 1225(b)." After a trial, the bankruptcy court entered a declaratory judgment to the effect that the Rowleys had a duty to pay net disposable income to the unsecured creditors. 143 B.R. 547. The Rowleys appealed to the United States Court for the District of South Dakota, which affirmed the bankruptcy court decision, and entered an order dismissing the case. The debtors now appeal the decision of the district court.

## II.

The Rowleys are entitled to have their motion for discharge granted only upon fulfillment of their obligations under their plan of reorganization. The question before us is what those obligations were. Specifically, we are called on to decide whether the Rowleys are obliged to pay to their unsecured creditors their disposable income earned during the plan period. An inquiry into what obligations arose from the confirmation of the plan requires that we first resolve what obligations the bankruptcy code

* The HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted, and took senior status on January 1, 1994, before the opinion was filed.

** The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable John B. Jones, Chief Judge, United States District Court for the District of South Dakota.

required the debtors to undertake in order to be permitted to reorganize their enterprise under the protection of the code. Once we determine what obligations the plan must impose, we may turn to what duties the plan did impose.

### A.

The relevant portion of the bankruptcy code provides that "[i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless ... the plan provides that all of the debtor's projected disposable income to be received in the three-year period ... will be applied to make payments under the plan." 11 U.S.C. § 1225(b). The difficulty with interpretation of section 1225(b) arises from Congress's use of the term "projected disposable income." The Rowleys urge that both the plan and the statute upon which it is based obligates them to pay only "projected" disposable income, which they equate with "predicted," or "estimated" disposable income. Since their plan provided that "[n]o dividend or distribution of any kind is projected" for holders of unsecured claims, they conclude that they are not obligated to pay any of the net disposable income received over the plan period. Their unsecured creditors and the Chapter 12 trustee, on the other hand, believe that the statute requires that the plan provide that all disposable income over the life of the plan be paid to the unsecured creditors. In fact, as we noted above, the Chapter 12 trustee articulated this understanding of the plan and the statute prior to confirmation of the plan in his recommendation for confirmation.

A plain reading of the language of the statute might appear to support the position advanced by the Rowleys. "Projected net disposable income" seems to indicate that the statute only requires that the Chapter 12 debtor pay that amount which the plan projects will be available as disposable income over the plan period.

Such a reading of the statute, however, yields an absurd result. The interpretation which the Rowleys promote would reduce § 1225(b) to a nullity. It would essentially direct farmers to put forth a reorganization plan, which, if objected to by unsecured creditors, would be confirmed over such objections if they simply "predict" that disposable income will be zero. Section 1225(b) would serve no purpose other than a mechanical one. This interpretation of the statute violates the very important and well-settled canon of statutory construction that the legislature is presumed not to have done a vain thing, inserting language for no purpose. See D. Ginsberg & Sons, Inc. v. Popkin, 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704 (1932). Since "[i]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available," Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982), we must look to the legislative purpose behind this statute.

### B.

Congress expressly drafted Chapter 12 of the bankruptcy code to address the farm crisis of the mid–1980s. Proponents of the Act recognized that "[m]ost family farmers have too much debt to qualify as debtors under Chapter 13 and ... have found Chapter 11 needlessly complicated, unduly time-consuming, inordinately expensive and, in too many cases, unworkable." H.R.Conf.Rep. No. 958, 99th Cong., 2d Sess. 48 (1986), reprinted in 1986 U.S.C.C.A.N. 5227, 5249. The bill was designed to

> give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land ... while, at the same time, preventing abuse of the system and ensuring that farm lenders receive a fair repayment.

Id. Additional insight with respect to the purpose of § 1225 is available from the Conference Report's explication of § 1224 concerning confirmation. Section 1224 requires that Chapter 12 confirmation proceedings be concluded within forty-five days. While the section provides for an exception to this rule, the conferees admonish the courts to allow such exceptions sparingly, since "proper operation of Chapter 12 ... depends on prompt action." Id. at 50.

■ It is clear then, from its legislative history, that the purpose of the Act was primarily to provide family farmers with a faster, simpler, and cheaper alternative to Chapter 11 and Chapter 13 procedures, while preserving the fair treatment of creditors under those chapters. One way in which the Act appears to attempt to accomplish this is through speedy plan confirmation. Plan confirmation could not be speedy, however, if each claim was litigated as thoroughly as is permitted under Chapter 11.

Under Chapter 11, unsecured creditors with impaired claims can block confirmation of a plan of reorganization if no class of impaired claim holders felt that the plan treated them fairly. *See* 11 U.S.C. § 1129(a). The purpose of conferring this power on creditors "is to provide some indicia of support by affected creditors where such support is lacking." *In re Windsor on the River Associates, Ltd.*, 7 F.3d 127, 131 (8th Cir. 1993). This balancing of power under Chapter 11 is designed to promote consensual reorganization plans that ensure fair treatment of creditors and thereby preserve the availability of capital. *Id.*

We cannot assume that Congress intended to depart from these general purposes of bankruptcy law when creating an expeditious avenue for farm reorganizations. To the contrary, we think that Congress intended to safeguard against unfairness by replacing the power conferred on creditors under Chapter 11 with an assurance under § 1225. It is logical that the power of claimants to determine for themselves what is fair treatment be replaced with an assurance that what can be done to protect their interests will be done. Disposable income is simply a measure of what can be done to promote fairness.

An emasculating reading, such as that advanced by the Rowleys, would fly directly in the face of the purpose of the statute. No rational lender would extend credit to a family farmer with the knowledge that § 1225(b) allows such borrowers simply to reject the debt without consulting the lender. As a result, legislation designed to increase the availability of credit for family farmers by ensuring creditors fair treatment despite their loss of avenues for influence would have the perverse effect of "drying up" such credit completely. While the statute may be less than facially ambiguous, we cannot believe that the meaning advanced by the Rowleys is the one Congress intended. Accordingly, we hold that § 1225(b)(1)(B) imposes a duty on debtors to include a provision in their reorganization plan that promises payment of net disposable income received during the plan period to unsecured creditors in the event that the trustee or holder of an allowed unsecured claim objects to confirmation of the plan.

C.

■ The Rowleys plan of reorganization included the provision required by § 1225(b)(1). Since the obligation before us is one arising from the plan rather than the statute, we must go further than simply decide what the statute requires. We must now determine what the plan requires. But it would be odd indeed if we found that language which the statute required before the plan could be confirmed meant something different once the plan was effected. Construing the language of the plan to mean what it does in the statute is hardly unreasonable. Allowing any other interpretation than that reached when reviewing the requirements of the statute would, in effect, allow the Rowleys to reap the benefits of a plan that could not have been confirmed in the first instance had they advanced this interpretation before confirmation.

Furthermore, the plan does not actually provide a projection for disposable income. It projects only that there would be no payments to unsecured creditors. This projection, however, does not address net disposable income at all. Therefore, even if we were to read the plan as requiring the Rowleys to pay only projected disposable income, we are not informed by the plan as to what that amount might be. As a result, we hold that the plan, as required by § 1225(b)(1), imposes a duty upon the Rowleys to pay their actual net disposable income received during the plan period to the unsecured creditors.

### III.

The Rowleys next assert that subsequent settlement agreements entered into with the creditors "cured" the objections filed by these creditors, and thereby eliminated the need to pay net disposable income to them. The argument appears to be that since these subsequent agreements were silent with respect to the issue of disposable income, and since they were reached after the objections were filed, the objections and therefore the disposable income requirement were not preserved.

Chapter 12 provides no support for the Rowleys's position. Section 1229 provides the avenue by which confirmed plans might be modified. Under § 1229(a), debtors have an opportunity to request and seek approval for modification. This does not appear to have been the case with respect to the agreements reached by the Rowleys and their creditors.

We must stress here that modification of confirmed plans outside the avenues provided by the bankruptcy code is not only inappropriate, it is in direct contravention of one of the fundamental purposes of bankruptcy law, namely, to discourage "side deals" between the debtor and some creditors to the detriment of other creditors. *In re Windsor*, 7 F.3d at 132. Accordingly, we cannot allow provisions of a confirmed plan to be altered outside the procedure set forth in § 1229.

### IV.

### A.

The Rowleys raise several issues with respect to the propriety and character of the objections that the unsecured creditors raised at confirmation of their plan, whether the objections were properly served, and whether these were sufficient to trigger the requirement of § 1225(b)(1). "[T]he provisions of a confirmed plan," however, "bind the Debtor [and] each creditor ... of the Debtor...." 11 U.S.C. § 1227(a). "An order confirming [a] plan of reorganization ... marks the termination of any distinctive bankruptcy proceeding and is therefore appealable." *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1354 (7th Cir.1990). Whether the Rowleys's creditors's objections were legally sufficient to impose requirements upon the plan as conditions precedent to confirmation under § 1225(b) was an issue that could have and should have been appealed upon resolution at confirmation, but were not. Accordingly, exceptions to the sufficiency or propriety of the objections at this time have been waived.

### B.

The issue of exactly what the confirmed plan required when a motion for discharge is challenged, however, is an issue concerning discharge. The Rowleys assert, without elaboration, that the meaning of "projected disposable income" should have been raised at confirmation. This argument is simply unreasonable, however, for it demands that all questions regarding what the debtors' obligations are be raised at confirmation or they are waived. This would be equivalent to requiring all terms of a contract to be free from disputes as to interpretation after the agreement is executed. In Chapter 12 cases like this one, where creditors have little or no part in the drafting of the terms of the plan, they cannot be required to foresee each and every potential alternative meaning that the debtor might attempt to apply to each term. To the contrary, the meaning of "projected disposable income," under the present circumstances, is properly considered here where a challenge has been raised to the debtors' motion for discharge. Before discharge may take place, the Rowleys must complete all payments under the plan. 11 U.S.C. § 1228(a). Determination of whether this has taken place requires the determination of what payments the plan requires.

### V.

For the foregoing reasons, we affirm the judgment of the district court.