33 F.3d 1005
 Bankr. L. Rep. P 76,071
In re BROKEN BOW RANCH, INC., Debtor.
BROKEN BOW RANCH, INC., Debtor-Appellant,
v.
FARMERS HOME ADMINISTRATION, Claimant-Appellee.
 No. 93-2895.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 11, 1994.
Decided Aug. 30, 1994.
 
 Wanda Howey-Fox, Yankton, SD, argued, for appellant.
 Thomas A. Lloyd, Asst. U.S. Atty., Pierre, SD, argued, for appellee.
 Before MAGILL, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and LOKEN, Circuit Judge.
 LOKEN, Circuit Judge.
 
 
 1
 Broken Bow Ranch, Inc., a South Dakota farming corporation (Broken Bow or Debtor), appeals the district court's[1] affirmance of a bankruptcy court[2] order denying Debtor a discharge in bankruptcy unless it pays $81,862 in "disposable income" to its unsecured creditors. See 11 U.S.C. Secs. 1225(b), 1228(a). Concluding that we have jurisdiction to review this final bankruptcy order and that the bankruptcy court did not err in determining Debtor's disposable income, we affirm.
 
 I.
 
 2
 Broken Bow filed for protection under Chapter 12 of the Bankruptcy Code, and its amended plan of reorganization went into effect on September 1, 1988. The plan required that Debtor pay all disposable income earned during the three-year life of the plan to unsecured and undersecured creditors. See 11 U.S.C. Sec. 1225(b)(1). Appellee Farmers Home Administration is a substantial undersecured creditor.
 
 
 3
 Debtor's plan ended on September 1, 1991, and Debtor filed its Final Report and Account in March 1992. FmHA objected to discharge on the ground that Debtor had not paid all disposable income to the Chapter 12 trustee for distribution to eligible creditors.[3] After a trial, the bankruptcy court concluded that Debtor had $81,862 in disposable income when the plan ended. The court denied Debtor's request for a discharge until that amount is paid and ordered Debtor and the trustee to agree on payment terms, subject to the court's approval. The district court affirmed, noting "that the bankruptcy court performed an in-depth analysis of this bankruptcy case and made a carefully considered decision." Debtor appeals.
 
 II.
 
 4
 "Unlike the district court, our jurisdiction in bankruptcy cases is limited to appeals from final orders. Compare 28 U.S.C. Sec. 158(a), with 28 U.S.C. Sec. 158(d)." In re Pleasant Woods Assocs. Ltd. Partnership, 2 F.3d 837, 838 (8th Cir.1993) (per curiam). As happens all too often in bankruptcy appeals, neither party addressed this issue, but we are nonetheless obliged to do so. See, e.g., Lewis v. United States Farmers Home Admin., 992 F.2d 767, 771 (8th Cir.1993).
 
 
 5
 In determining whether a bankruptcy court order is final for purposes of 28 U.S.C. Sec. 158(d), we must consider:
 
 
 6
 the extent to which (1) the order leaves the bankruptcy court nothing to do but execute the order; (2) delay in obtaining review would prevent the aggrieved party from obtaining effective relief; and (3) a later reversal on that issue would require recommencement of the entire proceeding.
 
 
 7
 In re Apex Oil Co., 884 F.2d 343, 347 (8th Cir.1989). Thus, if a district court order remands a case to the bankruptcy court for "further factual development" or for "other significant judicial activity involving the exercise of considerable discretion," it is not a final order and we lack jurisdiction to review it. Travelers Ins. Co. v. KCC-Leawood Corporate Manor I, 908 F.2d 343, 345 (8th Cir.1990); In re Vekco, Inc., 792 F.2d 744, 745 (8th Cir.1986). See In re Schneider, 873 F.2d 1155, 1157 (8th Cir.1989) (remand to determine proper fixed discount rate not a final order because bankruptcy court must "further develop the record and exercise considerable discretion in determining the appropriate rate").
 
 
 8
 In Lewis and in Pleasant Woods, we held that bankruptcy court orders refusing to confirm plans of reorganization under Chapter 13 and Chapter 11 were not final decisions for purposes of 28 U.S.C. Sec. 158(d). In each case, in addition to denying confirmation of the proposed plan, the bankruptcy court had retained jurisdiction and had described what type of modified plan the court would be willing to confirm. We held that such an order is interlocutory--until either a modified plan is confirmed, or the bankruptcy case is dismissed, significant judicial activity involving the exercise of considerable discretion remains uncompleted. See Lewis, 992 F.2d at 772-73.
 
 
 9
 The order in this case is somewhat similar to the nonappealable orders in Lewis and Pleasant Woods. The bankruptcy court has "withheld" discharge unless Debtor pays $81,862 of disposable income to its Chapter 12 creditors. Nonetheless, we conclude that this is an appealable final decision. Broken Bow's Chapter 12 plan has been completed, and it has submitted its Final Report. The order under review does not contemplate further significant activity in the bankruptcy case, such as the submission and consideration of a modified plan of reorganization. Either Debtor will make the $81,862 disposable income payment and receive a discharge, or it will fail or refuse to make the payment and the case will be dismissed without a discharge. Although the bankruptcy court must approve any deferred payment terms the trustee and Broken Bow may negotiate, this will not likely require the exercise of "considerable" judicial discretion. Now is clearly the most logical time for the parties to obtain a final appellate answer to the last significant issue in this proceeding, discharge. Therefore, we have jurisdiction over Debtor's appeal.
 
 III.
 
 10
 The Code provides that a Chapter 12 debtor is entitled to discharge "after completion ... of all payments under the plan," 11 U.S.C. Sec. 1228(a). Here, Broken Bow's plan required that it "make payments at the end of its three (3) year plan so as to comply with" Sec. 1225(b)(1)(B), that is, payments of all "disposable income." Disposable income is defined in the Code:
 
 
 11
 For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended--
 
 
 12
 (A) for the maintenance or support of the debtor or a dependent of the debtor; or
 
 
 13
 (B) for the payment of expenditures necessary for the continuation, preservation, and operation of the debtor's business.
 
 
 14
 11 U.S.C. Sec. 1225(b)(2). In Sec. 1225(b), Congress intended to provide creditors "an assurance that what can be done to protect their interests will be done. Disposable income is simply a measure of what can be done to promote fairness." Rowley v. Yarnall, 22 F.3d 190, 193 (8th Cir.1994).
 
 
 15
 The determination of what constitutes disposable income is a fact-intensive inquiry into whether debtor has "income which is in excess of that reasonably required for maintenance and continuation of [its] farming operation from one year to the next." In re Coffman, 90 B.R. 878, 885 (Bankr.W.D.Tenn.1988). Chapter 12 debtors must turn over disposable income during the course of their farm operations under a plan. See In re Kuhlman, 118 B.R. 731 (Bankr.D.S.D.1990). Creditors may also require a final disposable income determination at the end of the plan, prior to discharge, to ensure that debtor did not "accumulate an unreasonably large reserve of funds that would provide a windfall at the time of discharge." In re Gage, 159 B.R. 272, 280 (Bankr.D.S.D.1993); see Rowley, 22 F.3d at 194.
 
 
 16
 A. In this case, the bankruptcy court first calculated Broken Bow's potential disposable income by subtracting its obligations from its inventories at the end of the plan period. That consisted of adding cash on hand ($75,881), plus the value of hay, silage, and corn inventories ($177,542), plus the amount of two government payments, a 1990 "corn deficiency" payment and a 1991 disaster payment ($26,493); and then subtracting an outstanding FmHA note ($65,444), an outstanding "sealed corn" loan ($131,530), and unpaid property taxes ($1,080). The net amount, $81,862, is Broken Bow's "net disposable income" at the end of its Chapter 12 plan.
 
 
 17
 Broken Bow shoots one arrow at this calculation--it contends that the bankruptcy court erred in including the two government payments because they were received in 1992, after the end of the plan. We disagree. Whether or not these payments were entirely predictable, they were attributable to Debtor's farm operations during the plan period. In calculating disposable income so as to avoid providing a windfall to either the Debtor or its creditors, the bankruptcy court must have discretion to decide whether operations during the plan period should be considered on a cash or accrual basis. Rigid adherence to either approach might open the door to manipulation or abuse, or might overstate or understate disposable income in a particular case. Here, the record reflects that Broken Bow has received substantial government payments for each year of its operations, both before and during bankruptcy. The bankruptcy court's finding that the 1990 and 1991 government payments are disposable income is not clearly erroneous.
 
 
 18
 B. To determine whether the $81,862 is in fact "disposable" income for purposes of Sec. 1225(b)(2)(B), the bankruptcy court next undertook to determine whether Broken Bow has sufficient funds "for the continuation, preservation, and operation" of its farming operations following completion of the plan. The court found that, for the next crop year following its calculations, Broken Bow would have available $247,557 in carryover funds plus an unknown amount of government payments. The court therefore concluded that Broken Bow would be able to continue its farming operations even if required to pay $81,862 in disposable income to the trustee in a lump sum, something the court left open to further negotiation.
 
 
 19
 Broken Bow argues that this second phase of the bankruptcy court's calculations is flawed in many respects. Primarily, it argues that the court's disposable income order will improperly force a Chapter 12 debtor to borrow money to continue operations after the plan. At oral argument, Broken Bow conceded that this issue is committed to the bankruptcy court's discretion, as most courts have agreed: "whether it would be reasonable to require an emerging reorganized Chapter 12 debtor to seek an operating loan or credit from its suppliers, and thereby free up cash on hand for distribution to unsecured creditors, is also a function of the facts of each case." In re Wood, 122 B.R. 107, 116 (D.Idaho 1990); see In re Schmidt, 145 B.R. 983, 987 (Bankr.D.S.D.1991); In re Bowlby, 113 B.R. 983, 989 (Bankr.S.D.Ill.1990). As these courts have recognized, annual operating loans are common among farmers. Chapter 12 is designed to give bankrupt farmers a fresh start, not to give them an advantage over other farmers.
 
 
 20
 In this case, while the trial testimony differed, there was evidence that Broken Bow needed only $73,030 of carryover available funds in the year following the completion of its plan. Given the conflicting evidence as to whether borrowing would be necessary at all, and the fact that the plan had previously required payment of only $8,865 of Debtor's $499,413 in unsecured and undersecured debt, we conclude that the bankruptcy court's disposable income determination is well within its discretion, even if Broken Bow must borrow to finance part of its post-plan farming operations.
 
 
 21
 Broken Bow's remaining challenges to the bankruptcy court's available funds determination are purely factual in nature--whether the court "double counted" a $65,444 cash collateral loan, whether Broken Bow will be able to obtain future operating loans, whether FmHA will subordinate its operating loan to make other borrowing feasible, whether the court properly took into account Broken Bow's actual operations in 1992, whether the court speculated as to future income from corn stalk rent and wintering cattle, and whether the court should have deducted impending payments to secured creditors in determining net disposable income.
 
 
 22
 The determination of what expenditures are reasonably necessary for the continuation of a debtor's farming operations "represents a purely factual inquiry." In re Wood, 122 B.R. at 115. We review such findings under the clearly erroneous standard, accepting them "unless we are left with a 'definite and firm conviction that a mistake has been committed.' " In re Hilyard Drilling Co., 840 F.2d 596, 599 (8th Cir.1988). There was conflicting testimony on many of these issues. They affect not whether Debtor had disposable income at the end of the plan, but whether payment of that disposable income to Chapter 12 creditors will leave Broken Bow an adequate financial cushion for future operations. After careful review of the record, we conclude that the bankruptcy court's findings on these issues either are not clearly erroneous or, in the case of the double counting issue, do not affect the court's core determination that payment of $81,862 in disposable income will leave Broken Bow with adequate funds to continue its farming operations.
 
 
 23
 The June 9, 1993, order of the district court is affirmed.
 
 
 
 *
 The HONORABLE DANIEL M. FRIEDMAN, Senior United States Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 The HONORABLE DONALD J. PORTER, Senior United States District Judge for the District of South Dakota
 
 
 [2]
 The HONORABLE IRVIN N. HOYT, Chief Judge of the United States Bankruptcy Court for the District of South Dakota
 
 
 [3]
 Under Local Rule 309(I) of the District of South Dakota Bankruptcy Court, when the debtor serves a notice of filing of the Final Report and Account, creditors have thirty days to object to entry of discharge for failure to complete plan payments