**In re Richard Keith TURPEN and Marcia Ann Turpen, Debtors.**

**Bankruptcy No. 97–02407M.**

United States Bankruptcy Court, N.D. Iowa.

Jan. 21, 1998.

Jerrold Wanek, David A. Morse, Des Moines, IA, for Debtors.

Donna K. Webb, Asst. U.S. Atty., Sioux City, IA, for U.S.

James F. Kalkhoff, Waterloo, IA, for Comprehensive Systems, Inc.

Habbo G. Fokkena, Clarksville, IA, for First Security Bank & Trust.

William M. Frye, Charles City, IA, for First Citizens National Bank.

Carol F. Dunbar, Waterloo, IA, Chapter 13 Trustee.

### DECISION RE: CONFIRMATION OF PROPOSED PLAN

WILLIAM L. EDMONDS, Chief Judge.

The matter before the court is the proposed confirmation of debtors' Amended Chapter 13 Plan (docket no. 48). Objections to confirmation were filed by standing trustee Carol F. Dunbar, Comprehensive Systems, Inc., the United States of America and First Citizens National Bank.

Hearing was held December 16, 1997 in Mason City. Jerrold Wanek and David A. Morse appeared for debtors Richard and Marcia Turpen. Donna K. Webb, assistant United States attorney, appeared for the United States. James F. Kalkhoff appeared for Comprehensive. Habbo G. Fokkena appeared for First Security Bank and Trust. William M. Frye appeared for First Citizens National Bank. First Citizens did not prosecute its filed objections. At the hearing, it did not oppose confirmation of the proposed plan.

Carol F. Dunbar, the standing trustee, did not attend the confirmation hearing. Her office contacted me by telephone immediately prior to the hearing to say that she would not be present because of mechanical problems with her automobile. I so informed counsel at the outset of the hearing. Contrary to footnote 1 in the memorandum filed by debtors' attorneys, Dunbar did not call the court to say "that she chose not to pursue her objections." (docket no. 63, Debtors' Memorandum, page 1, fn. 1). I will consider the objections of the trustee which are supported by the evidence and any objection which may be considered as a matter of law.

The objections filed by the United States, the trustee and Comprehensive have common elements. A distillation of the numerous grounds of objection yields the following challenges to the plan:

(1) the plan has not been proposed in good faith. 11 U.S.C. § 1325(a)(3) [trustee and Comprehensive];

(2) the plan is not feasible as the debtors will not be able to make all payments under the plan and comply with the plan. 11 U.S.C. § 1325(a)(6) [United States, trustee and Comprehensive];

(3) the plan does not provide that all of the debtors' projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan. 11 U.S.C. § 1325(b)(1)(B) [United States, trustee and Comprehensive];

(4) the timing and details of asset liquidation are vague. [trustee and Comprehensive];

(5) the plan fails to provide for the curing of defaults. [trustee];

(6) the plan does not meet the best interest of creditors test. 11 U.S.C. § 1325(a)(4) [United States]; and

(7) the plan discriminates unfairly among unsecured creditors. 11 U.S.C. §§ 1322(b)(1), 1325(a)(1) [trustee].

### Standing

At the close of the hearing, debtors' counsel argued that the United States did not have standing as a creditor to object to the plan as the United States had not filed a proof of claim.

The United States may file a timely claim during the 180 days after the order for relief. 11 U.S.C. § 502(b)(9); Fed.R.Bankr.P. 3002(c)(1). The government's time to file will not expire until February 1998. Although the United States has not yet filed a formal claim, it asserts in its objection to confirmation that it "holds an unliquidated unsecured claim in excess of $500,000 for damages and penalties under the False Claims Act" (United States objection, docket no. 56, ¶ 2). The United States argues that its objection to confirmation constitutes an informal proof of claim and that it therefore has standing to object to confirmation of the plan.

Section 1324 of the Bankruptcy Code provides that "[a] party in interest may object to confirmation of the plan." The term "party in interest" is not defined by the Code. Section 1109 of the Code, although not applicable in Chapter 13, provides helpful guidance in determining who is a party in interest. It indicates that a "party in interest" includes a creditor. 11 U.S.C. § 1109(b). A creditor is an entity that has a claim against the debtor or the estate. 11 U.S.C. § 101(10). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured...." 11 U.S.C. § 101(5).

■ The Code does not require the allowance of a claim before the claimant may object to the plan. In providing who might object to plans, Congress used the broad term "party in interest." It did not restrict the filing of objections to creditors who hold allowed claims. *Contra In re Stewart*, 46 B.R. 73, 75 (Bankr.D.Or.1985). Nor does the status of creditor appear to hinge on the entity having filed a proof of claim. If it had so desired, Congress could have defined "creditor" in § 101(10) as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor, *proof of which has been filed.*" It did not. I find no requirement in the Code that status as a creditor depends on the filing of a claim. If it were otherwise, creditors in Chapter 7 cases could not meaningfully participate in no-asset cases without filing claims, even though the notice of bankruptcy advises that it is as yet unnecessary to file claims. *See* Fed.R.Bankr.P.2002(e). For example, creditors in no-asset cases could not file objections to exemptions without filing proofs of claim. Fed.R.Bankr.P. 4003(b).

■ From my reading of the Code and Rules, I conclude that when, as in this district, a confirmation hearing is held prior to a claims deadline, the filing of a claim is not required for a creditor to object to a Chapter 13 plan. I need not decide in this proceeding whether creditors who have filed untimely claims or creditors who can no longer file timely claims may still pursue confirmation objections.

■ Ruling that the United States need not have an allowed claim to object to confirmation of the plan does not answer the question of whether the United States was required to prove its status as creditor at the confirmation hearing.

United States' filings in this case include a request for notices, objections to exemptions and objections to confirmation. Debtors scheduled the Internal Revenue Service as a creditor for an unpaid tax debt. The appropriate party was the United States, not the Internal Revenue Service. *United States v. Laughlin (In re Laughlin)*, 210 B.R. 659, 660 (1st Cir. BAP 1997). In its objection to the plan, the United States alleges it is the holder of an unliquidated, unsecured claim for damages and penalties under the False Claims Act, 31 U.S.C. § 3729. It expects its

claim will be liquidated in an amount in excess of $500,000. It is the appropriate party to have a claim under the Act. 31 U.S.C. § 3729(a).

As has been stated, the Bankruptcy Code permits parties, including creditors, to object to Chapter 13 plans. In the context of civil litigation in the United States District Court, it has been said that a plaintiff must "demonstrate" standing, and that "[n]ormally, mere allegation will suffice, but, if controverted by the defendant, the plaintiff must demonstrate facts supporting his allegations." *Public Citizen v. Lockheed Aircraft Corp.*, 565 F.2d 708, 714 n. 22 (D.C.Cir.1977).

■■■ In bankruptcy, it may not be as clear as in other civil litigation how standing issues are raised by the pleadings. In the case before the court, the debtors filed a proposed plan. The United States objected, alleging in its objection its status as a creditor. It was not until debtors' closing argument at the confirmation hearing that the challenge to the government's standing was clearly articulated. I think it comes too late. A creditor in a case should have standing to object to a Chapter 13 plan based on allegations in its objection or based on the filing of a formal or informal proof of claim. If the debtor desires to raise the standing issue, the debtor must do so prior to the hearing on confirmation so that the creditor is prepared to put on some evidence of its status. It is not necessary in this decision to determine how much evidence is necessary to prove standing at the confirmation stage. It certainly would be less than what is necessary to prove one's claim.

In the pending case, the debtors did not timely controvert the government's standing. The United States' allegations as to its claim were sufficient. The United States has standing to object to the debtors' plan.

■■■ There is an apparent exception to this ruling on standing. The United States and Comprehensive have filed objections to the plan intended to trigger the disposable income or "best efforts" requirement of 11 U.S.C. § 1325(b)(1). The statute provides that

[i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

. . .

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1).

Although Comprehensive and the United States are creditors, neither yet has an allowed unsecured claim. Comprehensive's claim, proof of which has been filed, is not deemed allowed because of the debtors' objection. 11 U.S.C. § 502(a). The claim of Comprehensive has not yet been allowed under 11 U.S.C. § 502(b). The United States has not yet filed a proof of claim. Its claim is neither allowed nor deemed allowed. Moreover, neither Comprehensive nor the United States has asked the court to estimate its claim for the purpose of any confirmation issue. 28 U.S.C. § 157(b)(2)(B). Neither Comprehensive nor the United States is the holder of an allowed unsecured claim whose objection to the plan triggers the disposable income requirement of 11 U.S.C. § 1325(b)(1)(B). Nonetheless, the disposable income issue is before the court in considering debtors' plan, as the objection was made by the standing trustee.

### The Plan

Debtors' amended plan proposes to liquidate so many of the debtors' non-exempt assets as is necessary to pay allowed unsecured claims in full. If liquidation of all of debtors' non-exempt assets provides insufficient proceeds to pay all allowed unsecured claims in full, then the creditors holding allowed unsecured claims will share pro-rata in the distribution of the proceeds. If debtors must liquidate assets which are collateral for allowed secured claims, the secured creditors will be paid the proceeds until each is paid in full from its collateral. Debtors estimate that all creditors having secured claims are fully secured. The secured claims would be

paid by the debtors. Creditors holding allowed unsecured claims would be paid through the trustee.

The debtors own several real properties, most of which they lease out. According to exhibits I and J, the monthly income from these properties is $7,200, and the monthly expenses associated with the rental units, including mortgage payments and taxes are $6,714. Under the plan, the debtors would retain all of their income-producing properties which they do not need to liquidate to pay unsecured claims. The income stream would be used in part to make periodic payments to the lienholders under the terms of the loans. Debtors have sold two of their properties and intend to sell a third. They contend that the proceeds of these sales will be sufficient to pay all administrative claims, priority claims and allowed unsecured claims, not including the claims of Comprehensive and the claim of the United States under the False Claims Act. Comprehensive has filed an unsecured claim in the amount of $515,169.92 allegedly based on fraud, misappropriation, conversion, misuse of funds and nepotism. The United States alleges a claim in excess of $500,000 under the False Claims Act (31 U.S.C. § 3729). The debtors concede that if either of these claims is allowed to the extent claimed, the liquidation of non-exempt assets will be insufficient to pay all allowed unsecured claims in full. The creditors agree with this contention.

Although the plan proposes to liquidate, if necessary, all non-exempt property of the debtors, it does not propose to make any payments to the trustee other than from liquidation. Despite the trustee's objection with regard to the disposable income requirement (11 U.S.C. § 1325(b)(1)(B)), the debtors argue that they have no disposable income to pay to the trustee. The debtors' schedules (exhibits I and J) show total income of $8,605 per month. Of this, $7,200 is from rental income; $1,405 is from social security benefits. Mr. Turpen receives these benefits because of total disability resulting from a motor vehicle accident. He is a paraplegic. The debtors' total expenses, as shown on exhibit J, are $11,681. Debtors' schedules show a monthly deficit of $3,076. If one removes the rental income and the rental expenses from exhibits I and J, total monthly income would be $1,405, and monthly expenses would be $4,967. Without rental properties, the monthly deficit would increase to $3,562.

The debtors' monthly expenses unrelated to their rental properties are these:

| | |
|---|---|
| rent | $ 600 |
| utilities | 180 |
| telephone | 160 |
| cable tv | 70 |
| home maintenance | 150 |
| food | 400 |
| clothing | 75 |
| cleaning | 25 |
| medical expense | 200 |
| transportation | 450 |
| recreation | 125 |
| renters' insurance | 50 |
| life insurance | 200 |
| health insurance | 487 |
| auto insurance | 400 |
| taxes | 125 |
| student loan payments | 350 |
| daughter's college | 670 |
| legal fees | 250 |
| total | $4,967 |

There was no explanation at trial as to how debtors were financing this monthly deficit.

Debtors have valuable non-exempt assets. They have 13 parcels of real property, valuable household goods and antiques, and nine vehicles, including a boat, golf cart and a Mercedes Benz. Also, Richard Turpen has a "pension fund" valued at approximately $100,000 which he has failed to schedule. There is no way to determine from the evidence whether this fund is property of the estate, or if it is, whether it might be exempt. Mrs. Turpen also has a pension fund. There was no evidence on the amount or nature of her fund.

### Good Faith

To be confirmed, a plan must be proposed in good faith. 11 U.S.C. § 1325(a)(3). The trustee and Comprehensive contend that Turpens' plan was not proposed in good faith. I agree. The plan will not be confirmed.

A proper inquiry into good faith "should [analyze] whether the plan constitutes an abuse of the provisions, purpose or

spirit of Chapter 13." *Noreen v. Slattengren,* 974 F.2d 75, 76 (8th Cir.1992), citing *United States v. Estus (In re Estus),* 695 F.2d 311, 316 (8th Cir.1982). Each case is to be judged on its own facts considering the totality of the circumstances. *In re Estus,* 695 F.2d at 316. The court in *Estus* provided a list of 11 non-exclusive factors, which in addition to the percentage payment to unsecured creditors, should guide the court in its good faith determination. *Id.* at 317. Many of these factors were "subsumed" into the disposable income test which was added to the Code by amendment in 1984. *Noreen v. Slattengren,* 974 F.2d at 76; *Education Assistance Corp. v. Zellner,* 827 F.2d 1222, 1227 (8th Cir.1987).

■ In determining the good faith issue, the court must examine "factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." *Education Assistance Corp. v. Zellner,* 827 F.2d at 1227. Certain of the *Estus* factors are still relevant, particularly in this case: (1) the accuracy of the debtors' disclosure of debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are intended to mislead the court; (2) the extent of preferential treatment among creditor classes; (3) the debtors' motivation and sincerity in seeking Chapter 13 relief; and (4) the type of debt debtors seek to discharge and whether any of it is nondischargeable in Chapter 7. *In re Estus,* 695 F.2d at 317.

■ Turpens have not filed accurate schedules. Richard Turpen admits he has a fund of money which he describes as a retirement fund. He values it at $100,000. It is not disclosed in the schedules. Mrs. Turpen also has a pension fund. It also is not shown in the schedules. Debtors had an obligation to schedule all of their property interests. This is so regardless of whether they might claim an asset is not property of the estate or whether it might be claimed as exempt.

■ If the claim of either Comprehensive or the United States is allowed, debtors' plan would have treated unsecured creditors differently. An examination of the debtors' budget shows that debtors pay $350 per month on debt for which they became obligated on account of educational loans for their two sons. They have scheduled the debt at $12,000. It appears that debtors plan to pay the student loans regardless of the outcome of the claims disputes with Comprehensive and the United States. In short, they appear to plan to pay the student loans in full, even if they are not able to pay all of the unsecured loans in full. It may be that the student loans are not dischargeable, but this is not a satisfactory reason for treating them more favorably than other unsecured claims. The plan unfairly discriminates among unsecured creditors.

The claims of the United States and Comprehensive, if allowed, appear to be debts that would not be dischargeable in a Chapter 7 case. I realize that the nature of each claim has not been determined by trial. However, from the face of the claims, it can be said that if Comprehensive has a claim at all, it would be nondischargeable. *See* 11 U.S.C. §§ 523(a)(2), (4) and (6). If the United States has a claim at all under the False Claims Act, it would be nondischargeable. *United States v. Cassidy (In re Cassidy),* 213 B.R. 673, 679 (Bankr.W.D.Ky.1997)(claim for treble damages under False Claims Act nondischargeable under § 523(a)(7)); *United States v. Spicer (In re Spicer),* 155 B.R. 795, 802 (Bankr.D.D.C.1993)(elements of False Claims Act and § 523(a)(2) are coextensive), *aff'd,* 57 F.3d 1152 (D.C.Cir.1995), *cert. denied,* 516 U.S. 1043, 116 S.Ct. 701, 133 L.Ed.2d 658 (1996); *see also United States v. Commonwealth Companies, Inc. (In re Commonwealth Companies, Inc.),* 913 F.2d 518, 525 (8th Cir.1990) (False Claims Act is a fraud law within the government's police powers for purposes of § 362(b)(4)). It appears that either creditor will have a nondischargeable claim or no allowed claim at all. So debtors seek in this Chapter 13 to discharge debts, which if allowed, would not be discharged in Chapter 7. They propose to do this by paying the creditors nothing more than they would receive in a Chapter 7 case. They propose payment of a pro rata share of the proceeds of only non-exempt assets.

They do not propose to pay additional monies from a future income stream or from the liquidation of exempt assets.

Their plan is in effect a Chapter 7 liquidation because they propose to pay unsecured creditors no more than they would receive in a Chapter 7 case. *Matter of Strauss,* 184 B.R. 349, 351 (Bankr.D.Neb. 1995). Use of such a plan to obtain a discharge of otherwise nondischargeable debt is not in good faith. *See Matter of Strauss, id.* at 351–52 (plan determined not to be in good faith where debtors were not eligible for Chapter 7 discharge and their Chapter 13 plan was no more than a Chapter 7 liquidation); *see also In re Baker,* 736 F.2d 481, 482 (8th Cir.1984) (court should not confirm disguised liquidation plan that contravenes purposes of Chapter 13).

Last, debtors have failed to provide the court with a reasonable budget. They are spending more money each month than they bring in. They do not explain how they are financing this deficit. Nor do they provide an estimate of their cash flow if they must liquidate all non-exempt assets under the plan. This lack of full disclosure as to their financial situation militates against a finding of good faith.

I find that the plan was not proposed in good faith. For this reason, the plan cannot be confirmed. 11 U.S.C. § 1325(a)(3).

### Discrimination Among Classes of Creditors

 Besides being an element of good faith, the debtors' attempt to treat student loans differently from other unsecured debt prevents confirmation of the plan. A plan may create different classes of unsecured claims, but it cannot discriminate unfairly against any class. 11 U.S.C. § 1322(b)(1). Because this plan unfairly discriminates in the treatment of unsecured claims, it cannot be confirmed. 11 U.S.C. § 1325(a)(1).

### Disposable Income

 The trustee has objected to the plan's failure to provide payment of disposable income. Because of such objection, the plan cannot be confirmed unless "the plan provides that all of the debtor[s'] projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." 11 U.S.C. § 1325(b)(1)(B).

Debtors contend that they have no disposable income and that "lifestyle issues" concerning the way they spend money are irrelevant. They say that even if one removes all seemingly objectionable expenditures, they still have no disposable income.

I have already mentioned the debtors' failure to provide an estimate of projected disposable income in the circumstances of full liquidation of non-exempt assets. We are "in the dark" as to how the debtors will survive financially if all their non-exempt property is liquidated. Particularly relevant is how debtors propose to finance the monthly deficit they say will exist. It seems reasonable to conclude that a monthly deficit would be financed in one of two ways—by borrowing or by selling assets. The plan does not state that they will borrow. The plan does appear to require payment in full of post-petition claims (Plan, I(4)). The possible borrowing calls the feasibility of the plan into question. If debtors finance their deficit now or in the future by selling assets, confirmation issues are implicated. If the debtors are financing or plan to finance the deficit through the sale of non-exempt assets, the plan would violate the "best interest test." The plan cannot be confirmed unless creditors holding allowed unsecured claims receive under the plan what they would receive under a Chapter 7 liquidation. 11 U.S.C. § 1325(a)(4). Any personal use by debtors of the proceeds of liquidation of non-exempt assets violates this test.

 It may be that the deficit would be financed by liquidation of exempt assets. Although such assets are not considered in evaluating the plan under the best interests test, the income from liquidating exempt assets would be considered in evaluating the plan under the disposable income test. *Stuart v. Koch (In re Koch),* 109 F.3d 1285, 1289 (8th Cir.1997). "[T]here is no 'exception' to the disposable income test for 'exempt income' or income that is protected from execution by other state or federal law."

2 Lundin, Chapter 13 Bankruptcy, § 5.35 at 5–96 (2d ed.1994). If debtors are financing their deficit each month through the sale of exempt assets, or if they plan to, this should have been disclosed and made part of their budget.

The debtors' failure to provide answers to these questions prevents the court from determining that the plan meets the disposable income test. The test is not met for one more reason. It is likely in this circuit that upon a triggering objection by the trustee or an unsecured creditor, a Chapter 13 plan is not confirmable unless the debtors include in the plan a provision "that promises payment of net disposable income received during the plan period to unsecured creditors." *Rowley v. Yarnall,* 22 F.3d 190, 193 (8th Cir.1994). The case of *Rowley v. Yarnall* involved § 1225(b)(1)(B), the Chapter 12 disposable income provision nearly identical to § 1325(b)(1)(B). The court held that the provision requires a plan to promise to pay the disposable income that is received, not merely what is predicted to be received. 22 F.3d at 193.

Debtors' plan projects no disposable income during the three-year period. Debtors propose, therefore, that no disposable income, in the form of future income, will be paid to the plan. In view of the trustee's objection, the debtors' plan cannot be confirmed. *In re Markman,* 5 B.R. 196 (Bankr. E.D.N.Y.1980), cited by debtors, does not require a contrary result. Debtors provide it as support for their proposal to make payments of a fixed amount over less than three years. *Markman* does not aid debtors because it was decided before the disposable income requirement was added to Chapter 13 in 1984.

### Vagueness and Feasibility

██ I agree with the trustee and Comprehensive that the plan is vague as to the timing and means for carrying out the plan. Also, because of the monthly deficits and lack of showing as to how they will be financed, I find the plan is not feasible.

IT IS ORDERED that confirmation of debtors' proposed plan is denied.